[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This case is on appeal from the February 28, 1997 and April 16, 1997 judgments of the Ottawa County Court of Common Pleas, which granted judgment in favor of appellee, Michael Sakalo. On appeal, Lakevue Marina, Inc., appellant, asserts the following sole assignment of error:
"APPELLANT'S FIRST ASSIGNMENT OF ERROR
 "THE OTTAWA COUNTY COMMON PLEAS COURT COMMITTED REVERSIBLE ERROR WHEN IT RULED THAT THE SALE OF THE WATERCRAFT IS EXCEPTED FROM THE APPLICATION OF THE STATUTE OF FRAUDS BY VIRTUE OF O.R.C. 1302.04(C)(3)."
In 1990, appellant brought suit in the Port Clinton Municipal Court, now known as the Ottawa County Municipal Court, against appellee asserting a cause of action pursuant to R.C. Chapter 4585 to collect monies owed it for repairs and storage of a boat titled in the name of appellee. The decision of the municipal court, granting summary judgment to appellant, was overturned by this court by our decision and judgment entry dated August 5, 1994. The case was remanded to the lower for a factual determination of who was the owner of the boat. Because of the passage of time, the amount of money owed for storage continued to increase. Once the amount of the claim exceeded the jurisdictional limit of the municipal court, the action was refiled in the Ottawa County Court of Common Pleas. Rick Fantauzzi, who was the other possible owner of the boat, was not named as a party in the refiled suit because he had declared bankruptcy.
At trial, conflicting evidence was presented as to the facts surrounding the sale of appellee's boat to Fantauzzi. Appellee testified as follows. On July 28, 1990, he orally agreed with Fantauzzi to sell the boat for $3,100. Appellee signed the back of the title on July 28, 1990, to assign the title to Fantauzzi. Appellee did not give Fantauzzi the title, however, because Fantauzzi only gave appellee a $600 downpayment. Fantauzzi had agreed to pay the balance due at the end of the week. However, he never did.
Fantauzzi took immediate possession of the boat. Appellee told Fantauzzi not to take the boat out of the dock until he paid appellee, but he learned that Fantauzzi did use the boat.
Fantauzzi moved the boat from appellee's dock at Bar Harbor Marina to a dock at Lakevue Marina. A month after the sale, Fantauzzi called appellee to tell him that something was wrong with the boat's transmission. Appellee went to Lakevue Marina where the boat was docked to check into the matter and found that Fantauzzi had a mechanic check the boat and add oil for $25. Fantauzzi again asked for a delay of a couple of weeks to pay the final amount due on the boat and appellee agreed. The next weekend, appellee learned that the boat was docked at Lakevue Marina. Appellee did not contact Fantauzzi at that time. While the boat was at Lakevue Marina, Fantauzzi had the boat repaired without appellee's knowledge. It was appellee's understanding that Fantauzzi was paying for the repairs.
The next time appellee saw the boat was after it had sunk at his dock at the Bar Harbor Marina. Appellee was advised by his insurance company to continue to carry insurance on the boat until final payment was received. Therefore, he used a portion of the insurance proceeds to pay to have the boat raised and moved to a marina for salvage. The remainder of the proceeds reimbursed him for the amount Fantauzzi still owed.
Fantauzzi testified as follows. The sale was conditioned upon the boat being seaworthy and the transmission being repaired. However, Fantauzzi took possession of the boat and began some cosmetic work, replaced some equipment, changed the name of the boat, and did some other repairs. He obtained a verbal estimate of the cost of repairing the transmission, which he testified appellee approved. The Lakevue Marina bill indicates that Fantauzzi was the owner of the boat and authorized the repairs. Fantauzzi testified, however, that he told Anton Kopanski, the president of Lakevue Marina, that the boat belonged to appellee and he was responsible for the cost of the repairs.
The boat repair was done from August 12 through September 14, 1990. Fantauzzi removed the boat from the Lakevue Marina when no one was there. He presumed that appellee had paid the bill because the keys were in the ignition. He took the boat back to the dock at Bar Harbor Marina. On the way back, one of the engines quit running. When he got to the dock, he tied up the boat and left. Later, the boat sank.
Kopanski testified that he did not recall giving an estimate of the cost of repair because they did not know what was wrong with the boat until the mechanics saw it. Furthermore, he had never done any work for appellee and did not know him. He also did not recall Fantauzzi telling him that Fantauzzi did not own the boat.
The morning after Fantauzzi took the boat out of the Lakevue Marina, Kopanski went over to Bar Harbor Marina to see if it was there. He found it there still afloat. The next day, which was October 2, 1990, his employees went to get the boat and found that it had sunk. The person who did the salvage work knew that Lakevue Marina had been working on the boat, so he brought it back to Lakevue Marina. Because the engine needed immediate attention to save it, Lakevue Marina proceeded to have the engine rebuilt. Lakevue Marina tried unsuccessfully to contact Fantauzzi. They received a letter from Fantauzzi in October 1990 indicating that appellee owned the boat and was responsible for the initial repairs to the boat as part of the sales agreement.
The total cost of the transmission repairs was $1,482.25. The cost of salvaging the boat was $1,020.77. The cost of removing the boat to store it on land was $425.50. Lakevue Marina also incurred additional losses for storage of the boat. The amount owed to appellant is now greater than the value of the boat.
In its sole assignment of error, appellant argues that the trial court erred when it ruled that the sale was excepted from application of the statute of frauds. The court concluded that the sale fell within the exception in R.C. 1302.04(C)(3) because the boat had been received and accepted by Fantauzzi. Appellant argues that Fantauzzi never accepted the goods. Alternatively, it argues that Fantauzzi revoked acceptance of the goods.
We find that R.C. 1302.04(A) is not applicable in this case. Generally, only a party to the oral contract can take advantage of the fact that it fails to conform to the requirements of the statute because the oral contract is voidable, not void. Lefferson v. Dallas (1870), 20 Ohio St. 68, paragraph one of the syllabus, and Minns v. Morse (1846), 15 Ohio Reports 568. The purpose of the statute of frauds is to prevent fraud between the contracting parties, not between one of the parties and a stranger to the agreement. Legros v. Tarr (1989), 44 Ohio St.3d 1, 8, andWilber v. Paine (1824), 1 Ohio Reports 251, 256. Only where the existence of a valid and enforceable contract is a primafacie element of a cause of action would a stranger to the contract be able to raise the issue of compliance with the statute of frauds. Bell v. Horton (1996), 113 Ohio App.3d 363, 366.
In the case before us, appellant is asserting a claim of statute of frauds in order to make appellee liable for the cost of repair to the boat and storage fees. We find that appellant may not assert the statute of frauds to impose such liability upon appellee. Appellant's sole assignment of error is not well-taken.
Since the trial court's ultimate decision granting appellee judgment on the complaint was correct, we find that the trial court did not commit error prejudicial to appellant. The judgment of the Ottawa County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.